UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
UNITED STATES OF AMERICA

            -v-                                  20-CR-287 (JPO)

MARCO SEGOVIA-LANDA,                             OPINION AND ORDER
LEDIF PEREZ-PEREZ,
LISANDY JOAQUIN ORTIZ, and
JOSE RIVERA,
                        Defendants.
```

J. PAUL OETKEN, District Judge:

Defendants Marco Segovia-Landa, Ledif Perez-Perez, Lisandy Joaquin Ortiz, and Jose Rivera are charged with participating in a conspiracy to distribute heroin, fentanyl, methamphetamine, and cocaine in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841 (b)(1)(A), and 21 U.S.C. § 846. Defendants have filed a number of pretrial motions, including a motion to dismiss the indictment, a motion for a bill of particulars, a motion to suppress certain evidence, a motion to sever, and a motion for discovery. (*See* Dkt. Nos. 50, 57, 63, 64.) All of the motions have been fully briefed (Dkt. Nos. 51, 54, 63, 64, 68, 69), and this Court conducted oral argument on March 3, 2021.

**I.     Factual Background**

The following facts are established by the criminal complaint (Dkt. No. 1).

In January 2020, as part of an investigation into narcotics trafficking and money laundering, the DEA obtained a GPS location warrant on a phone number belonging to a particular individual ("CC-1"). On February 11, 2020, law enforcement identified the phone as moving from the Bronx, New York, to a hotel in Somerset, New Jersey. When law enforcement arrived at the hotel, location information showed that CC-1 had left the vicinity. The officers

1

reviewed the hotel's sign-in log and identified a guest, Segovia-Landa, who had signed in with an out-of-state driver's license.

At around 4:30 p.m. that afternoon, law enforcement observed a woman, later identified as Alicia Nichols, enter the hotel parking lot and park in a secluded area. They then observed Segovia-Landa leave the hotel, get into a different vehicle, and park next to Nichols. Segovia-Landa exited his vehicle and opened one of his rear doors, after which law enforcement saw Nichols' trunk open and close before she drove out of the parking lot. Law enforcement then followed Nichols until she stopped at a gas station, where they approached her and obtained her oral consent to search her vehicle. There, they found a bag filled with approximately seven kilograms of fentanyl and five kilograms of methamphetamine.

Back at the hotel, law enforcement approached Segovia-Landa and obtained oral consent to search his hotel room, vehicle, and cell phone. In his hotel room, officers found a large quantity of cash; in his car, they found a large suitcase and a cardboard box containing what appeared to be narcotics. After law enforcement informed Segovia-Landa of his *Miranda* rights, which he waived, Segovia-Landa told the officers that he had sold approximately 2-3 kilograms of narcotics earlier that day to an individual — whom the officers believed to be CC-1 — who had driven to meet him at the hotel, paid in cash, and then left. Segovia-Landa also told law enforcement that he was scheduled to sell narcotics that evening to another individual, later identified as Perez-Perez.

At around 8:30 p.m., Segovia-Landa had a call with Perez-Perez in the presence of law enforcement, during which Perez-Perez indicated that he would arrive at the hotel at approximately 9:10 p.m. At 9:10 p.m., Perez-Perez called Segovia-Landa and said that he would be arriving with a second vehicle, black in color, which would pull up to the front of the hotel

and pick up Segovia-Landa, who was then supposed to direct the driver to his own vehicle. At the direction of law enforcement officers, who were listening in, Segovia-Landa provided a false description of himself that matched that of an undercover officer.

Officers then saw two vehicles enter the parking lot. In one, they observed an individual, later identified as Perez-Perez, in the driver's seat, and another individual, later identified as Ortiz, in the passenger seat. The second car matched the description Perez-Perez had given Segovia-Landa; it was driven by an individual later identified as Rivera. Both cars circled the lot, and then, as planned, the second vehicle pulled up in front of the hotel. The undercover officer walked up to the vehicle, and Rivera told him to get in. The officer declined, saying that his car was nearby. Rivera followed by car as the officer walked to Segovia-Landa's vehicle, where he took the suitcase containing narcotics out of the trunk.

Around then, the undercover officer observed car headlights shining in his direction from the car occupied by Perez-Perez and Ortiz. Rivera told the officer not to worry, as one of the occupants in the car (presumably referring to Perez-Perez) was the person with whom Segovia-Landa had spoken earlier over the phone. A voice speaking over the sound system of Rivera's car then said, "It's me," and Perez-Perez flashed his lights. The officer realized that Rivera, Perez-Perez, and Ortiz were connected via an ongoing phone call, and he recognized the voice on the call as that of Perez-Perez. The undercover officer placed the suitcase into Rivera's vehicle and then heard Perez-Perez say that he was going to pull up nearby. As his car moved closer, law enforcement officers placed Perez-Perez, Ortiz, and Rivera under arrest. After the arrest, officers found a mobile phone in Perez-Perez's car that had an ongoing phone call with a mobile phone that officers found on "speakerphone" mode in Rivera's car.

## II. Discussion

The Court addresses each motion in turn.

### A. Grand Jury Venire

Perez-Perez has filed a motion to dismiss the indictment on the ground that the grand jury that returned the indictment did not reflect a fair cross-section of the community. In particular, Perez-Perez argues that the grand jury sitting in White Plains underrepresented Black and Hispanic individuals, in violation of the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1861 *et seq.*, and the Fifth and Sixth Amendments. In denying this motion, this Court adopts the reasoning of Judge Crotty in *United States of America v. Schulte*, No. 17-CR-548, 2021 WL 1146094 (S.D.N.Y. Mar. 24, 2021), in which he denied a nearly identical motion to the one under consideration here.

First, Judge Crotty considered the Sixth Amendment challenge. To establish a violation of the Sixth Amendment right to a jury venire drawn from a fair cross-section of the community, a defendant must prove "(1) "[t]hat the group alleged to be excluded is a distinctive group in the community; (2) [t]hat the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) [t]hat this underrepresentation is due to a systematic exclusion of the group in the jury-selection process." *Id.* at *2-3 (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). Like the defendant in *Schulte*, Perez-Perez fails to meet the second and third prongs of this test. To determine whether the representation is "fair and reasonable" under the second prong, the Second Circuit uses the absolute disparity method, which "measures the difference between the groups'

4

representation in the relevant community and their representation in the jury venire." *Id.* at *7.[1]
African Americans make up 12.45 percent of the jury-eligible population in White Plains and 11.2 percent of the White Plains master wheel (an absolute disparity of 1.25 percent), while Hispanic Americans make up 14.12 percent of the jury-eligible population in White Plains and 12.97 percent of the White Plains master wheel (an absolute disparity of 1.15 percent). In both cases, the disparities are insufficient to satisfy *Duren*'s second prong. *See id.* ("Under Second Circuit precedents, absolute disparities nearly as high as 5% have not been found to satisfy the underrepresentation element under *Duren*."). With respect to the third prong, Perez-Perez, like the defendant in *Schulte*, fails to show that the exclusion of African Americans and Hispanic Americans from the jury pool was the result of "the system of jury selection itself, rather than external forces." *Id.* (internal citation omitted).

Perez-Perez's Fifth Amendment and JSSA arguments are likewise unavailing. To establish a violation of the Equal Protection Clause, a defendant must offer "proof of discriminatory intent." *Id.* at *9 (citing *United States v. Biaggi*, 909 F.2d 662, 677 (2d Cir. 1990)). Perez-Perez offers no such proof, and this Court "will not assume or infer that this District has been operating under an *intentionally discriminatory* Jury Plan since 2009." *Id.* Finally, for the reasons Judge Crotty offers in *Schulte*, Perez-Perez's statutory claims fail because he has not demonstrated a "substantial failure to comply" with the JSSA. *See id.* at *9-10 (internal citation omitted).

---

[1] As in *Schulte*, the relevant jury venire is the White Plains master wheel and the relevant community is White Plains. *See id.* at *5-6 (holding that it was proper for the Government to indict the defendant in White Plains, especially in light of the COVID-19 pandemic, and that "[w]here a jury venire is drawn from a properly designated division, we look to *that division* to see whether there has been any unlawful or unconstitutional treatment of minorities" (internal citation omitted)).

5

Thus, Perez-Perez's motion to dismiss the indictment is denied.

B.     **Bill of Particulars**

Ortiz has filed a motion asking the Court to require the Government to produce a bill of particulars. *See* Fed. R. Crim. P. 7(f). A defendant is entitled to a bill of particulars when necessary (1) "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial"; (2) "to prevent surprise"; and (3) to allow the defendant "to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Skelos*, No. 15-CR-317, 2015 WL 6159326, at *12 (S.D.N.Y. Oct. 20, 2015) (internal quotation marks and citation omitted).

Here, the charges in the indictment, as further detailed in the complaint, are specific enough to give Ortiz notice of the charges against him, prevent surprise at trial, and allow him to pursue a double-jeopardy argument in the event of a future prosecution. Ortiz is charged with participating in a narcotics conspiracy, and, as the Government notes, the complaint "is a seven-page affidavit outlining the facts of the Government's encounter" with him. (Dkt. No. 68 at 19.) Ortiz argues that he is entitled to information regarding "when, where[,] and in what manner Ortiz is alleged to have become a member of the narcotics conspiracy; how, where[,] and with whom Ortiz conspired; and the approximate dates and times of his participation in the alleged conspiracy." (Dkt. No. 57 at 6.) But a defendant in a conspiracy case is "not entitled to a bill of particulars setting forth the 'whens,' 'wheres,' and 'with whoms' regarding the … enterprise and conspiracy." *United States v. Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996); *see also United*

6

*States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975) ("The Government need not, when charging conspiracy, set out with precision each and every act committed by the conspirators in the furtherance of the conspiracy.").

Accordingly, Ortiz's motion is denied.

### C. Motion to Suppress

Ortiz has also filed a motion to suppress the search and seizure of a cell phone alleged to belong to him, arguing that the search warrant lacked probable cause. To prevent unreasonable searches and seizures, the Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause is a "fluid concept" that depends on the particular facts at issue, but it generally requires showing that the "totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Clark*, 638 F.3d 89, 93-94 (2d Cir. 2011) (internal quotation marks and citations omitted). In assessing probable cause, a court reviewing a challenged warrant "must accord considerable deference to the … determination of the issuing magistrate." *Id.* at 93 (internal citation omitted). The job of a reviewing court is merely to ensure that the magistrate judge had "a substantial basis for making the requisite probable cause determination." *Id.* (internal quotation marks and citation omitted).

The Government meets this deferential standard. The search warrant affidavit contains sufficient information to support the magistrate judge's finding of probable cause, including evidence that the defendants coordinated their narcotics activity by phone, and DEA Special Agent Emery Hall's statements that "narcotics traffickers often carry multiple phones to further their criminal activities" and that they store "records relating to their illegal activity" on these

devices. (Dkt. No. 68-1 at 8, 11.) Courts in the Second Circuit have routinely found such statements enough to support probable cause. *See United States v. Hoey*, No. 15-CR-229, 2016 WL 270871, at *9 (S.D.N.Y. Jan. 21, 2016) (noting that courts have found probable cause to search cell phones "based on the experience of agents familiar with narcotics trafficking that traffickers commonly use cellphones to communicate in the course of their narcotics distribution, as well as to store relevant information, including the names and contact information of suppliers, purchasers, and confederates"); *United States v. Estime*, No. 19-CR-711, 2020 WL 6075554, at *19 (S.D.N.Y. Oct. 14, 2020) (holding that even where there was no allegation that incriminating text messages were transmitted to or from the cell phone in question, the magistrate judge nevertheless had a substantial basis for its probable-cause determination based on "the evidence of Defendant's participation in a controlled substance trafficking conspiracy" and "the opinions offered by" the Special Agent affiant).

Even if the warrant did lack probable cause, the exclusionary rule is a last resort that should be applied only where law enforcement "exhibit[s] deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *United States v. Raymonda*, 780 F.3d 105, 117-18 (2d Cir. 2015) (internal citation omitted). In general, searches pursuant to a warrant — like the one at issue here — are sufficient to establish "that a law enforcement officer has acted in good faith in conducting the search." *United States v. Leon*, 468 U.S. 897, 922 (1984) (internal quotation marks and citation omitted). The presumption of good faith is overcome only "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; [or] (4) where the warrant is so facially efficient that reliance upon it is unreasonable." *Clark*, 638 F.3d at 100 (internal citation

8

omitted). None of those circumstances is present here. Accordingly, there is no reason to suppress the evidence in question, and Ortiz's motion is denied.

### D. Motion to Sever

Pursuant to Federal Rule of Criminal Procedure 14(a), "[i]f the joinder of offenses or defendants in an indictment … appears to prejudice a defendant … the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). A defendant requesting severance therefore carries the "heavy burden of showing that joinder will result in substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks and citation omitted).

Segovia-Landa makes two arguments in support of his motion to sever. First, he argues that he will be prejudiced by "the overwhelming evidence against [his co-defendants] and the relative paucity of evidence against" him. (Dkt. No. 63 at 5.) He claims that the jury "would not be able to isolate the evidence against [him] and would not be able to weigh the evidence fairly." (*Id.*) This argument is unpersuasive. As a threshold matter, the established rule in the context of conspiracy charges "is that a non-frivolous conspiracy charge is sufficient to support joinder." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988). In addition, as the Government points out, Segovia-Landa is unlikely to be prejudiced by a joint trial given that all defendants are charged with similar offenses, and Segovia-Landa was the common participant in each narcotics transaction at issue. (*See* Dkt. No. 68 at 33-34.)

Second, Segovia-Landa argues that he will be prejudiced by the "Government's use of any statements by codefendant[s]." (Dkt. No. 63 at 4.) In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court highlighted the particular risk of prejudice in a joint trial where "a non-testifying defendant's confession specifically inculpates a co-defendant." *United States v. Jass*, 569 F.3d 47, 55 (2d Cir. 2009). At this stage, however, a *Bruton* argument is premature, as the Government has not yet indicated what post-arrest statements it intends to use at trial. *See United States v. Sezanayev*, No. 17-CR-262, 2018 WL 2324077, at *5 (S.D.N.Y. May 22, 2018) (denying a motion to sever as premature where it was not yet clear "what statements the Government intend[ed] to use, and what redactions Defendants [would] propose"). The Government plans to produce such statements thirty days before the deadline for motions *in limine*, at which point Segovia-Landa may renew his motion. *See id.* (holding that defendants could renew any *Bruton* motions "once apprised of the Government's evidence").

Thus, Segovia-Landa's motion to sever is denied with leave to renew at the motion *in limine* stage.

### E.   Motion for Discovery

Finally, Segovia-Landa has filed a motion for discovery and for *Brady* and *Giglio* material. First, Segovia-Landa requests "unredacted copies of all material produced or to be produced to prepare his defense," as "numerous documents have been produced so heavily redacted they have no value in preparing his defense." (Dkt. No. 64 at 2.) The Government concedes that its initial discovery production on July 9, 2020, included several DEA reports with "substantial redactions." (Dkt. No. 68 at 35.) But the Government re-produced those reports on December 11, 2020, this time with only minimal redactions, which appears to provide Segovia-Landa with the relief he seeks. (*Id.*) In addition, the Government has pledged to "continue to

review its records and produce additional material as it becomes aware of any and as it becomes available." (*Id.*)

Next, Segovia-Landa demands that the government produce material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). (*See* Dkt. No. 64 at 3.) The Government has stated that it is not currently aware of any additional *Brady* material in this case, but that it "will continue to provide timely disclosure of any additional *Brady* material when and if any such material comes to light." (Dkt. No. 68 at 35-36.) In light of the Government's representation that it recognizes its obligations under *Brady*, the Court sees no basis for granting specific requests for *Brady* material at this juncture. *See United States v. Gallo*, No. 98-CR-338, 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying defendant's motion to compel production of *Brady* material based on the Government's representations that it was "aware of its obligations under *Brady*" and would "produce any Brady material to the defense well before trial").

Segovia-Landa also demands that the Government produce "impeachment material on each and every witness it plans to or may call to testify against the defendant," pursuant to *Giglio v. United States*, 405 U.S. 150 (1972). (Dkt. No. 64 at 6.) This request is premature. The Government has yet to identify which witnesses it intends to call at trial, and, in any event, courts generally decline to compel early disclosure of impeachment or *Giglio* material. *See, e.g., United States v. Nixon*, 418 U.S. 683, 701 (1974) (holding that the "need for evidence to impeach witnesses is insufficient to require its production in advance of trial"); *United States v. Mejia*, No. 98-CR-4, 1998 WL 456257, at *1 (S.D.N.Y. Aug. 5, 1998) ("It is well-established that a defendant [is] not entitled to [*Giglio*] information in advance of trial."). Moreover, the Government has represented that it will produce impeachment material at the same time as Jencks Act material: "shortly before the beginning of trial, or, if additional time is reasonably

11

required to review such material, sufficiently in advance of the witness's testimony so as to avoid any delay at trial." (Dkt. No. 68 at 37.) This representation likewise makes early disclosure unnecessary. *See Mejia*, 1998 WL 456257, at *1 (denying motion to compel the production of *Giglio* material where "the Government represents that it will make such information available to the defendants in this case at the time that it provides prior statements of witnesses pursuant to the Jencks Act"); *United States v. Rodriguez-Perez*, No. 10-CR-905, 2012 WL 3578721, at *10-11 (S.D.N.Y. Aug. 16, 2012) (declining to order early disclosures under *Giglio* where the Government intended to make such material available to defense counsel one week before trial); *United States v. Trippe*, 171 F. Supp. 230, 238 (S.D.N.Y. 2001) ("The usual practice in this district is that the Government agrees to make impeachment information available to the defense at the same time as Jencks Act Material, that is, at least one day before the Government witness is called to testify.").

Accordingly, Segovia-Landa's motion for discovery is denied.

### III. Conclusion

For the foregoing reasons, Defendant Perez-Perez's motion to dismiss the indictment, Defendant Ortiz's motion for a bill of particulars and motion to suppress, and Defendant Segovia-Landa's motion for discovery are denied. Defendant Segovia-Landa's motion to sever is denied with leave to renew at the motion *in limine* stage.

The Clerk of Court is directed to terminate the motions at Docket Numbers 50, 57, 63, 64, and 65.

SO ORDERED.

Dated: May 17, 2021
      New York, New York

                                                    J. PAUL OETKEN
                                        United States District Judge